CALLAHAN, Circuit Judge,
dissenting:
I agree with the majority that the district court did not abuse its discretion in denying the motion for discovery and an evidentiary hearing. I also agree that the district court properly modified its protective order so as to exclude from its coverage non-privileged materials. However, I dissent because the majority, in finding that the district court abused its discretion in modifying its protective order, distorts the applicable law as set forth in our en banc opinion, Bittaker v. Woodford, 331 F.3d 715 (9th Cir.2003), and misperceives the facts in the case. An implied waiver, as Bittaker explains, arises only once a specific claim of privilege is presented to a court and any resulting protective order is forward-looking. Lambright did not seek a protective order until September 2003, after 15 months of discovery, the protective order sought only to limit the scope of Lambright’s deposition, and Lambright subsequently declined to testify. Accordingly, there was no implied waiver prior to the district court’s September 2003 order, and that order does not cover the discovery that took place before it was entered. Moreover, Lambright has not shown that any rights he may have had to a protective order were not waived, or that the State should be denied access on resentencing to materials that were revealed during Lam-bright’s habeas proceedings that were open to the public. Accordingly, I dissent.
I. BACKGROUND
A. Initial Proceedings
The majority’s extraordinary interpretation of the district court’s 2003 protective order is best understood in the context of the history of Lambright’s criminal proceedings.
In March of 1982, Joe Leonard Lam-bright was convicted of first degree murder, kidnaping, and sexual assault. After a brief sentencing proceeding in which the sentencing judge found one aggravating factor — that the “offense was committed in an especially heinous, cruel or depraved manner” — and no substantial mitigating evidence, Lambright was sentenced to death. See Lambright v. Schriro, 490 F.3d 1103, 1106, 1109 (9th Cir.2007) (“Lambrigkt III ”).
Lambright’s conviction and sentence were affirmed by the Arizona courts on direct appeal and in state post-conviction proceedings. Id. at 1104. In April 1987, Lambright filed a federal habeas petition under 28 U.S.C. § 2254 in the United States District Court for Arizona, arguing inter alia that he had been denied effective assistance of counsel. The district court denied the petition, and Lambright appealed.
In 1999, the Ninth Circuit reversed Lambright’s conviction on the ground that the use of dual juries for a single trial of both Lambright and Smith violated due process. The en banc court then reheard the case, reversed the panel decision, and affirmed the denial of habeas relief with respect to the dual jury issue. Lambright v. Stewart, 167 F.3d 477 (9th Cir.), rev’d, 191 F.3d 1181 (9th Cir.1999) (en banc) (“Lambright I ”).
*828 In 2001, this court found that Lam-bright had raised a colorable claim of ineffective assistance of counsel at sentencing. The court remanded for an evidentiary hearing “to determine whether Lambright was denied effective assistance of counsel at sentencing because of the failure to investigate and present evidence of his psychiatric condition and social history.” Lambright v. Stewart, 241 F.3d 1201, 1208 (9th Cir.2001) {“Lambñght II ”).
B. The Proceedings on Remand in 2002-2003
Upon receipt of a certified copy of our order, the district judge set the case for a scheduling conference, and granted Lam-bright’s motion for appointment of associate counsel. Lambright sought authorization of expenditures, and when the district court initially denied the motion, Lam-bright submitted a declaration under seal. The district court granted the motion to file under seal, and in February 2002, it subsequently granted the motion for authorization of expenditures of funds. Over the next year and a half, Lambright, through his counsel, vigorously developed his case. There are over 80 docket entries during this time, including motions by Lambright to seal certain documents, the appointment of psychiatrists to examine Lambright, orders allowing contact visits with Lambright, stipulations concerning visits, orders requiring the disclosure of the names of all lay and expert witnesses, the release of Lambright’s medical and mental health records, and motions for discovery by Lambright.
On August 26, 2003, the court granted the State’s motion to depose Lambright and his trial counsel. On September 2, 2003, in response to that order, Lambright filed the motion for a protective order that is at the heart of this appeal. Lambright requested “a protective order limiting the scope of questioning of Petitioner at his deposition, to only those matters which are relevant to the subject matter in dispute.” The short memorandum of points and authorities in support of the motion was based on Lambright’s Fifth Amendment right not to be compelled to be a witness against himself.
In considering the motion, the district court relied on two cases, Bittaker v. Woodford, 331 F.3d 715 (9th Cir.2003) (en banc), and Bean v. Calderon, 166 F.R.D. 452 (E.D.Cal.1996). On September 23, 2003, the district court granted Lam-bright’s motion in an order that read:
IT IS FURTHER ORDERED that all discovery granted to Respondents, including the requests to depose sentencing counsel Brogna, Petitioner’s experts and Petitioner, shall be deemed to be confidential. Any information, documents and materials obtained vis-a-vis the discovery process may be used only by representatives from the Office of the Arizona Attorney General and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus (and all amendments thereto) pending before this Court. None may be disclosed to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This Order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment in this matter.
IT IS FURTHER ORDERED that Respondents’ deposition of Petitioner must specifically relate to assertions Petitioner has made in this habeas petition (or amendments thereto), and for which it is *829 likely that Petitioner has personal knowledge. The questions must be phrased in such a manner that they are directly linked to the federal claim upon which Petitioner is being deposed. Petitioner may assert his Fifth Amendment privilege, but the assertion of that privilege may be cause for the Court to draw an adverse inference in this habeas proceeding.
Despite the September 23, 2003, protective order, and despite the court’s warnings that Lambright’s refusal to answer could be considered in determining whether he had carried his burden of proof, Lambright refused to testify. The case proceeded to a hearing, and, in August 2004, the district court denied Lambright’s ineffective assistance of counsel claim. Lambright appealed. The Ninth Circuit concluded that Lambright had received ineffective assistance of counsel, reversed the district court, vacated the death sentence, and remanded with instructions to grant the writ. Lambright III, 490 F.3d 1103.
C. The District Court’s 2008 Modification of the Protective Order
In October 2008, after the case had been returned to the district court, the State filed a Motion to Modify Protective Order requesting that the protective order be modified to allow the Pima County Attorney’s Office access to the materials produced during the federal habeas proceedings. The district court granted the motion in part. It first explained:
It is apparent, when considered in context with the original motion and the oral argument, that the Court intended the above quoted protective order to address the concerns set forth in Bean and Bittaker. The second paragraph tracks Bean and protects Petitioner’s Fifth Amendment right against self-incrimination, the only real concern raised by Petitioner in his motion. The first paragraph was intended to track Bittaker. Although the Court did not include the word “privileged” as a modifier to the phrase “information, documents and materials,” it is evident from a reading of Bittaker that a protective order’s necessity derives solely from the need to protect the attorney-client privilege.
After discussing Bittaker, the district court determined that “a protective order under Bittaker limits use during retrial only of privileged materials obtained by invoking a federal habeas court’s power of discovery compulsion for the limited purpose of litigating a petitioner’s ineffectiveness claim.” The court noted that Lambright opposed modification of the protective order on principle and had not identified “any privileged information or any self-incriminating statements obtained during the discovery process that, if disclosed to prosecutors, would prejudice his resentencing.” The court concluded that the protection order “was intended to shield Petitioner from prejudice at retrial from (1) any statements he made during his deposition concerning the crime and (2) any information subject to the attorney-client privilege obtained during discovery.” The court determined that it would modify the protective order “so that it will be narrowly tailored to solely protect documents and information that qualify for protection under the Fifth Amendment or the attorney-client privilege.” To that end, Lambright was given 30 days in which “to identify the specific information or materials he asserts should be protected from use at his resentencing.”
Lambright, instead of filing any further motion in the district court, filed a notice of appeal from the December 4, 2008, order. When Lambright failed to respond to *830 the December 4, 2008, order, the district court issued an order on March 24, 2009, (a) granting the State’s Motion for Modification of the Protective Order, (b) vacating the Protective Order, and (c) denying Lambright’s motion for an order to show cause. Lambright filed another notice of appeal from this order.
Lambright’s appeals from the December 4, 2008, order and the March 24, 2009, order were consolidated. On December 21, 2009, the Ninth Circuit issued a memorandum disposition. Lambright v. Ryan, 359 Fed.Appx. 838 (9th Cir.2009) (“Lam-bright IV”). The panel dismissed the first appeal as. pre-mature, and then set forth its ruling on the second appeal in two paragraphs. The first, explaining its action, reads:
The district court did not explain the factual or legal basis of its ruling on Lambright’s motion to sanction the state for violating the Protective Order. Instead, the court summarily dismissed the motion in a footnote. When a district court fails to make findings of fact in a ruling on a motion for discovery sanctions, the appellate court reviews its decision de novo. Adriana Int’l Corp. v. Thoeren, 913 F.2d 1406, 1408 (9th Cir.1990). In this case, however, de novo review is not possible because the record is unclear about the extent to which the Protective Order was violated, the reasons ' the violation occurred, and the prejudice that Lambright may have suffered as a result of the violation. Accordingly, we vacate the district court’s dismissal of Lambright’s motion and remand so that the court may resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation and then determine whether sanctions are warranted. 359 Fed.Appx. at 840-41 (footnote and final citation omitted). The second paragraph comments:
Lambright’s premature appeal cut short the district court’s efforts to identify the material that Lambright believed merit- ■ ed continued protection under the Protective Order or a modified protective order. In particular, Lambright never responded to the court’s request that he identify material that was protected by his attorney-client privilege, work-product privilege, or Fifth Amendment privilege not to disclose information that could be used to establish aggravating factors or to undermine his claim of mitigating factors during future capital sentencing proceedings. Estelle v. Smith, 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). For the same reason, Lambright had no opportunity to explain whether, in his view, non-privileged material or material that did not emerge through the discovery process warranted protection, given this court’s rationale in Bittaker v. Wood-ford: “If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.” 331 F.3d 715, 722 (9th Cir.2003) (en banc). As a result, the district court did not have sufficient information to rule on the state’s motion to modify the Protective Order and the record does not contain enough information to allow this court to review the district court’s decision on that question.
Id. at 841 (parallel citation omitted).
D. The District Court’s 2010 Modification of the Protective Order
We finally come to the order that is presently before us. On remand, the district court, on May 4, 2010, issued an order *831 granting the State’s motion to modify the Protective Order, denying Lambright’s motion for discovery and a hearing, and essentially denying Lambright’s motion for an order to show cause.[1]
The State sought modification to allow prosecutors access to the depositions and discovery obtained during the federal habeas proceedings. The district court found guidance in cases that considered (a) the avoidance of duplicative discovery, (b) whether the materials had been produced in reliance on the protective order, and (c) whether the information had been released through public court proceedings.
The court observed:
[Beginning in June 2002, [Lambright] willingly engaged in discovery and disclosure without the benefit of a protective order. Indeed, he was examined by his own experts on October 28 and December 3, 2002, and Respondents’ experts on July 25 and 30, 2002. The Court’s protective order, entered on September 23, 2003, does not state that it applies retroactively. Thus the only materials that fall within the scope of the protective order are those that were disclosed after September 23, 2003.
Lambright opposed the motion, arguing that the State had failed to provide notice that it would attempt to modify the protective order, and that he had relied on the protective order’s broad language and the court’s verbal assurances that his testimony would not be used against him in a later resentencing. The district court, however, was not persuaded. It noted that the order specifically provided that either party could seek modification and determined that Lambright did not rely on the order in conducting discovery. The court observed that Lambright had sought only a narrow protective order and that its verbal assurances covered only Lambright’s testimony.
Reiterating the reasons set forth in its 2008 order, the district court explained that it had inadvertently omitted the word “privileged” in its protective order. The court stated that “it was apparent, when considered in context with the original motion and oral argument in support of the motion, that the Court intended its protective order to address only the concerns set forth in Bean and Bittaker.” The district court explained that its order “was intended to shield [Lambright] from prejudice at resentencing from (1) any statements he made during his deposition concerning the crime, and (2) any information subject to the attorney-client or work-product privilege obtained during discovery.” The court concluded that “[b]ecause the plain language of the order extends beyond the parameters of privileged material — and Petitioner did not rely on the Court’s mistake to litigate his ineffectiveness claim— modification is appropriate.”
The district court then listed the general items from the habeas proceeding that Lambright claimed were covered by the attorney-client, work-product, and the Fifth Amendment privileges. The district court, however, chastised Lambright for failing to (a) identify specific communications or relevant dates of disclosure, (b) identify any compelled testimony, and (c) explain the relevance of his Fifth Amendment right against self-incrimination to the listed documents. Excluding Lambright’s testimony (which remains protected), the only items arguably containing privileged attorney communications or work product were the interviews and depositions of trial *832 counsel, but Lambright “failed to identify what in these transcripts is privileged.”
Finally, the court concluded that because Lambright “did not seek to seal any of the materials submitted and testified to during the evidentiary hearing in support of his habeas claim, those materials became a matter of public record. The district court cited our language in Foltz v. State Farm Mutual Insurance Co., 331 F.3d 1122, 1134 (9th Cir.2003):
When discovery material is filed with the court, however, its status changes. If the documents are not among those which have “traditionally been kept secret for important policy reasons,” Times Mirror Co. v. United States, 873 F.2d 1210, 1219 (9th Cir.1989), then “the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.),” Phillips, 307 F.3d at 1213, apply. In Nixon v. Warner Communications, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a federal common law right “to inspect and copy public records and documents.”
This appeal is from the district court’s May 4, 2010, order.
II. STANDARD OF REVIEW
I agree with the majority that we review the modification of a protective order for abuse of discretion. Beckman Indus., Inc. v. Int’l Ins. Co., 966 F.2d 470, 472 (9th Cir.1992). However, the abuse of discretion test we set forth in United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc), requires that the district court’s findings be given substantial deference. In Hinkson, we stated:
If the trial court identified the correct legal rule, we move to the second step of our abuse of discretion test. This step deals with the tension between the Supreme Court’s holding that we may reverse a discretionary trial court factual finding if we are “left with the definite and firm conviction that a mistake has been committed,” [United States v.] U.S. Gypsum Co., 333 U.S. [364,] [ ] 395, 68 S.Ct. 525 [92 L.Ed. 746] [ (1948) ], and its holding that we may not simply substitute our view for that of the district court, but rather must give the district court’s findings deference, see Nat’l Hockey League [v. Metropolitan Hockey Club ], 427 U.S. [639,] [ ] 642, 96 S.Ct. 2778 [49 L.Ed.2d 747] [ (1976) ]. Resolving that tension by reference to Anderson, we hold that the second step of our abuse of discretion test is to determine whether the trial court’s application of the correct legal standard was (1) “illogical,” (2) “implausible,” or (3) without “support in inferences that may be drawn from the facts in the record.” Anderson [v. City of Bessemer], 470 U.S. [564,] [] 577, 105 S.Ct. 1504 [84 L.Ed.2d 518] [ (1985) ]. If any of these three apply, only then are we able to have a “definite and firm conviction” that the district court reached a conclusion that was a “mistake” or was not among its “permissible” options, and thus that it abused its discretion by making a clearly erroneous finding of fact.
Id. at 1262 (parallel citations and footnotes omitted).[2] Thus, the abuse of discretion *833 standard requires that we defer to the district court unless its determination was a “mistake” or not among its “permissible options.”
III. DISCUSSION
An obvious question in light of the district court’s prolonged, patient, and careful consideration of this case is how the majority can conclude that the district court’s May 2010 order was an abuse of discretion. The majority asserts that the order was an abuse of discretion because: (1) the district court’s “interpretation of the text of the protective order is illogical” (Majority at 817); and (2) the district court “had a duty to enter a protective order prior to ordering the disclosure of privileged materials.” Majority at 818. Neither of these reasons withstands analysis.
A. The District Court’s Interpretation Of Its Protective Order Is Logical.
Although the majority may not like the May 2010 order, there is nothing “illogical” about it. As the district court noted, Lam-bright had engaged in discovery for some 15 months before seeking a protective order. During these 15 months, Lambright made a couple of motions to seal particular documents and the district court granted those motions. Lambright never sought a general protective order, and the motion for a protective order that he did file in September 2008 sought only to limit “the scope of questioning of Petitioner at his deposition.” The facts that the parties had engaged in discovery for over a year without any protective order, and that Lambright’s motion only sought prospective relief for testimony to be given at a deposition, would lead most judges and attorneys to “logically” conclude that the motion was forward-looking and did not concern any specific prior discovery, let alone all of it.[3]
B. The District Court Was Not Under Any Duty To Issue A Protective Order.
While the majority’s first reason strays from the facts of this case, its second reason misstates the law and is unsupported by the facts. The majority misreads Bittaker, 331 F.3d 715, as requiring that all discovery in a federal habeas petition be sealed, regardless of whether any party has requested a protective order. This allows it to assert that the district court *834 “had a duty to enter a protective order prior to ordering the disclosure of privileged materials.” Majority at 818. In support of its position the majority asserts that the “defendant impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel.” Majority at 818. In one sense this is true as the petition places counsel’s performance in issue. However, it does not follow that all discovery undertaken is privileged. Rather, as explained in Bittaker, an implied waiver for purposes of giving rise to a protective order arises when a party seeks a protective order from the court in return for disclosing particular information. 331 F.3d at 720. Thus, under Bittaker, the filing of a habeas petition is not in itself sufficient to invoke an implied waiver protective order. In this case, there does not appear to have been any request for a protective order prior to Lambright’s September 2, 2003 motion.
1. An implied waiver arises when a claim of privilege is presented to a court and any resulting protective order is forward-looking.
Our en banc opinion in Bittaker starts by distinguishing an implied waiver from “the more traditional express waivers.” 331 F.3d at 719. We explained:
An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure — they merely recognize the waiver after it has occurred. The cases upon which the state relies
... hold that, once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries. Because these express waiver cases do not involve the court-ordered disclosure of privileged information after “the client [has] assert[ed] a claim or defense that place[d] at issue the nature of the privileged material,” we do not find them particularly useful in ascertaining the scope of Bittaker’s waiver of his attorney-client privilege under the fairness principle.
Id. at 719-20 (citations and footnote omitted). The opinion further observes that an express waiver “need not be effectuated by words or accompanied by the litigant’s subjective intent,” and “the privilege may be waived by the client’s, and in some cases the attorney’s actions, even if the disclosure that gave rise to the waiver was inadvertent.” Id. at 720 n. 4.
In contrast, the doctrine of implied waiver “allocates control of the privilege between the judicial system and the party holding the privilege.” Id. at 720 (quoting Developments in the Law — Privileged Communications, 98 Harv. L.Rev. 1450, 1630 (1985)). We explained:
The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.... Essentially, the court is striking a bargain with the holder of the privilege by letting him know *835 how much of the privilege he must waive in order to proceed with his claim.

Id.

We then noted that this regime gave rise to three important implications. “The first is that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.” Id. “Second, the holder of the privilege may-preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition.” Id. at 721. Third, “if a party complies with the court’s conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims.” Id.
Under the regime set forth in Bittaker the doctrine of implied waiver does not arise when a habeas petition is filed, but only once a defendant brings a question of privilege to the court’s attention. The court then “gives the holder of the privilege a choice:” if he wants to litigate the claim, he must waive the privilege “to the extent necessary to give your opponent a fair opportunity to defend against it.” 331 F.3d at 720. The directive that an implied waiver only arises when the privilege is presented to a court is reinforced by our statement in Bittaker that “[b]ecause these express waiver cases do not involve the court-ordered disclosure of privileged information after the client has asserted a claim or defense that placed at issue the nature of the privileged material, we do not find them particularly useful in ascertaining the scope of Bittaker’s waiver of his attorney-client privilege under the fairness doctrine.” Id. at 720 (internal quotation marks and citation omitted).
Furthermore, the very purpose of an implied waiver makes it prospective only. An implied waiver is a court imposed limited waiver of a privilege, but “the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition.” Id. at 721. This is possible only if the court order imposing a limited waiver is in existence when the holder makes his choice. Thus, in a federal habeas petition an implied waiver arises only when the petitioner affirmatively asserts a privilege before the court and the court then issues a forward-looking protective order.
The majority ignores these features of the doctrine of implied waiver when it asserts that “the district court abused its discretion because it had a duty to enter a protective order prior to ordering the disclosure of privileged materials.” Majority at 818. In support of its assertion, the majority quotes our statement in Bittaker that “district courts have the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding.” 331 F.3d at 727-28. We made this statement in the context of the question of enforcement. In that context, it is clear that “whenever they permit discovery of attorney-client materials” refers to protective orders issued in response to petitioners’ assertions of privileges. Any suggestion that the filing of a habeas petition itself, or commencement of discovery in a habeas petition, somehow invokes an implied waiver would make implied waivers the rule, rather than an exception to “more traditional express waivers.” Id. at 719.
2. The District Court did not order disclosure of protected materials.
The majority attempts to justify its application of the September 2003 protective *836 order to prior discovery by asserting that the district court “entered an order in July 2001, authorizing the parties to engage in discovery.” Majority at 836. This effort to extend Bittaker reflects the majority’s contention that the filing of the habeas complaint compels the immediate issuance of a protective order. The district court’s docket sheet shows that only two orders were entered in July. The first one simply resets the preliminary scheduling conference. The second order sets dates for actions by counsel. Neither order was issued in response to any assertion of privilege by Lambright, and neither can be fairly read as ordering Lambright to take any action that was contrary to his attorney-client privilege or his privilege against self-incrimination.
Indeed, the district court’s docket sheet reflects that the parties and counsel cooperated in the process of preparing the habeas case. The parties sought assistance from the district court to ensure funds for the preparation of Lambright’s case and to set time tables for discovery. In the fall of 2002, when Lambright sought authorization of expenditures to allow a neuropsychologist to examine him, the district court’s order allowing the neuropsychologist to have a confidential contact visit with Lambright was issued pursuant to a stipulation by the parties. The only other order that might arguably be interpreted as compelling discovery was entered on February 11, 2003, and directed the Arizona Department of Corrections to provide copies of Lambright’s medical and mental health records to counsel for both parties. However, there is nothing in the record to suggest that Lambright had. any concern about protecting those materials. Instead, Lambright’s failure to advance any such concerns appears to have been deliberate, as his counsel did file motions to seal other documents which the district court granted.[4]
A fair reading of the record discloses that: (a) the parties did not request any court order to commence discovery; (b) Lambright’s counsel knew how to file motions to seal documents and successfully made such motions, and (c) Lambright did not make any assertion of privilege or request for a protective order prior to his September 2003 motion. Accordingly, as a matter of fact and law, there was no implied waiver or protective order prior to the fall of 2003.
C. There Is No Showing That Lam-bright Was Not Represented By Competent Counsel In His Federal Habeas Proceeding.
Another troubling aspect of the majority’s opinion is its failure to consider that Lambright was represented by counsel at all times in his federal habeas petition. Instead, the majority appears to assume that a defendant’s right to a protective order under Bittaker is absolute and cannot be waived by a petitioner’s counsel. The majority never explains why it deems this right different from all of the constitutional rights that can be waived.
Absent Supreme Court case law to the contrary, we should assume that whatever right to a protective order a petitioner may have under Bittaker, it can be waived by counsel for any number of reasons. Here, Lambright’s attorneys apparently chose not to seek a protective order until Lam- *837 bright was faced with a deposition. From all appearances this was a reasonable strategic choice. Lambright has never explained why the exposure of the materials exchanged prior to the protective order has harmed him, or may harm him in the future. Moreover, Lambright succeeded in having a writ issue and forcing the State to resentence him. Whatever right to a protective order that may arise when a state prisoner files a federal habeas petition challenging the competency of his attorney in his state proceedings, that right may be waived by counsel and was waived by Lambright prior to his September 2003 motion for a protective order.[5]
D. To The Extent That Materials Were Presented To The Court In Hearings On Lambright’s Habeas Petition That Were Open To The Public, Lambright Has Waived His Right To Maintain Their Secrecy.
In granting the State’s motion for a modification of the protective order, the district court relied in part on the established rule that the public has a common law right of access to judicial documents. See Nixon v. Warner Comme’ns, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). It then found that because Lambright “did not seek to seal any of the materials submitted and testified to during the evidentiary hearing in support of his habeas claim, those materials became a matter of public record.” In support of its conclusion the district court cited our holding in Foltz that:
When discovery material is filed with the court, however, its status changes. If the documents are not among those which have traditionally been kept secret for important policy reasons, then the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.) apply.
331 F.3d at 1134 (internal citations and quotations omitted).
The majority concludes that the State may not use the materials even though they became part of the public record. It offers two grounds for its conclusion. First, it argues that a protective order under Bittaker is sufficient in itself “to protect the narrow waiver of the attorney-client waiver and work product privileges and to prevent the disclosure and use of materials in a resentencing proceeding.” Majority at 820. Second, it argues that Lambright “was entitled to rely on the assurances by the district judge, made during the evidentiary hearing, that the protective order extended to evidence introduced at the hearing.” Majority at 821. The first argument fails because, as has been noted, there was no implied waiver prior to the September 2003 protective order. The second argument fails because the district court’s assurances were clearly limited to Lambright’s testimony, and Lambright, despite having procured a protective order, declined to testify.
*838 The majority’s first argument is based on the fiction that the district court had somehow issued an implied waiver protective order prior to the September 2003 protective order. No such order was .issued. As a result, the parties did not, and’ could not, contest the meaning of the protective order as the parties did in Perry v. Brown, 667 F.3d 1078 (9th Cir.2012). In Perry, we determined that the district court abused its discretion and compromised the integrity of the judicial process by not enforcing its prior order affirmatively sealing the trial recording. Id. at 1088. Here, there was no assertion of an implied waiver or any request for a protective order until the fall of 2003, and there is no identified order by the district court that sealed any matter prior to the September 2003 protective order. Thus, even if the recipient of a protective order under Bittaker might not be required to protect material from disclosure in a public trial, here there is no protective order and thus no presumably confidential materials.
The majority’s second ground also fails because the facts are not as it portrays them to be. The assurance that the district court gave Lambright was clearly and specifically limited to his testimony. The district judge stated:
Also, Mr. Lambright, I should mention I have also issued a protective order so that should the petition be granted, either now or at some later time and there is a new sentencing hearing in this case, ■ your testimony concerning the crimes in this case that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing.
This assurance, by its own clear terms, is limited to Lambright’s testimony “concerning the crimes in this case” that he would not have given but for the protective order.[6] Thus, Lambright could not have relied on the assurance for anything other than the use of his testimony. But as Lambright chose not to testify, he cannot argue that he relied at all on the district judge’s assurance.[7]
Because no protective order was entered prior to the September 2003 order and the September 2003 order was, as a matter of law, forward-looking, it follows that the district court was not compelled to recognize any privilege in the materials discovered before September 2003. Indeed, it seems incredibly inefficient to require the State to go through the process of “rediscovering” in the state resentencing proceedings information that is now known to the public, and to the State.[8] If there are *839 any items that should be suppressed or if any procedure should be unfair, Lam-bright’s counsel can raise it in the state proceedings. I agree with the district court that the state courts will respect the protective order that the district court did issue.[9]
CONCLUSION
On remand, counsel cooperated in preparing Lambright’s federal habeas case. There was no request to seal documents or for a protective order until the fall of 2003 when Lambright filed a motion for a protective order limiting the scope of questioning at his forthcoming deposition. The district court, applying our then recent en banc opinion in Bittaker, 881 F.8d 715, issued a protective order that it subsequently determined was broader than necessary or appropriate. The State sought a modification of the protective order to allow it to use documents disclosed in the federal habeas proceedings in the state resentencing proceedings. The State did not seek to use Lambright’s testimony because, even under the protective order, Lambright had refused to testify.
The majority’s determination that the district court abused its discretion in modifying its protective order misreads Bittaker and the factual record. Bittaker holds that an implied waiver arises when a petitioner asserts a privilege before the district court. The court’s subsequent order “does not order disclosure of the materials categorically; rather the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them.” 331 F.3d at 720 (emphasis added). Thus, the very nature of an implied waiver protective order renders it forward-looking. Accordingly, the district court’s orders pri- or to the September 2003 protective order are not protective orders and the September 2003 order does not cover materials disclosed prior to its issuance.
The majority also fails to appreciate two additional factors that support the district court’s order. First, whatever rights Lambright might have had to a protective order were subject to waiver. Second, to the extent that the materials that Lam-bright now seeks to protect were disclosed during public sessions in his habeas proceedings, the State should be allowed to use those documents pursuant to the common law right of access to judicial documents.
Even if one or more of the preceding arguments were not persuasive, we would still be required to affirm the district court’s modification of its protective order. As the majority notes, we review the modification of a protective order for abuse of *840 discretion. See Beckman Indus., 966 F.2d at 472. Thus, if the district court reasonably thought that under Bittaker its protective order was forward-looking, or that none of its orders prior to September 2003 constituted protective orders, or that Lam-bright had waived any privilege against the disclosure of discovery prior to the September 2003 order, or that the privilege had been lost by the exposure of the materials in the public proceedings, then we must affirm. The district court’s order would not be a mistake or not among its permissible options. See Hinkson, 585 F.3d at 1262.
Finally, I am concerned with the practical consequences of the majority’s approach. By distorting the doctrine of implied waiver and misreading the facts in this case, the majority delays and increases the expense of resentencing Lambright without offering him any substantive protection. The public and the State have knowledge of all the documents that the majority would protect. Thus, all the majority’s opinion accomplishes is to force the State to conduct additional discovery in the resentencing proceeding to formally gather information that it has already seen. The district court recognized the inefficiency of such a course when it granted the motion to modify the protective order. Moreover, the majority’s unique interpretation of Bittaker is likely to generate considerable litigation as parties and courts argue over whether a court order at the beginning of a federal habeas proceeding somehow seals all discovery beyond any attorney’s ability to waive the privilege.[10] Accordingly, I dissent.

. Because I agree with the majority’s denial of relief to Lambright on his motions to disqualify counsel, for discovery, and for sanctions, my discussion of the 2010 order is limited to the modification of the protective order.

. The footnote in Hinlcson that follows this paragraph reads:
This view of our test for abuse of discretion review — one that looks to whether the district court reaches a result that is illogical, implausible, or without support in inferences that may be drawn from the facts in the record' — is one that already has partial support in a number of our cases and in those of other circuits. See, e.g., Wilderness *833 Soc’y v. Babbitt, 5 F.3d 383, 387 (9th Cir.1993) ("The court's decision ... is not implausible and, based upon this factor alone, the court's decision would not be considered an abuse of discretion.”); see also Savic v. United States, 918 F.2d 696, 700 (7th Cir.1990) ("A finding is clearly erroneous when, although there may be some evidence to support it,’ the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ We may have such a conviction if the trial judge’s interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence.”) (citations omitted), cert. denied, 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991); United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir.2001) ("A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole.”); Conte v. Gen. Housewares Corp., 215 F.3d 628, 634 (6th Cir.2000) ("[W]e cannot conclude that the district court’s decision was so unreasonable, illogical, or arbitrary as to constitute an abuse of discretion.”).
585 F.3d at 1262 n. 21.

. Furthermore, the majority's interpretation of the order is based, in part, on its misconception that the district court was compelled to issue a protective order when Lambright filed his habeas petition. See supra. Once this misconception is cleared, there is nothing illogical about reading the September 23, 2003 order as forward-looking, which was the district court’s view of its order.

. For example, on October 17, 2001, counsel filed a “Motion to file under seal Confidential Declaration by Joe Leonard Lambright.” The court granted the motion on October 23, 2001. On June 13, 2002, Lambright filed a "Motion to file under seal confidential declaration of David P. Tiers: First Amended Phase v. Case Management Plan and Budget Plan by Joe Leonard Lambright.” The court granted that motion on June 17, 2002.

. Arguably, a petitioner could claim that habeas counsel was ineffective in failing to assert his attorney-client privilege and privilege against self-incrimination, and in failing to seek a protective order. However, under Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner would have to show both that "counsel’s performance was deficient” and "that the deficient performance prejudiced the defense.” Id. at 687, 104 S.Ct. 2052. Lambright would be hard pressed to meet these criteria. He prevailed on his habeas petition, and his failure to explain how the exposure of materials discovered prior to the protective order will prejudice him in the resentencing proceeding makes it impossible to find that he was prejudiced by counsel's failure to immediately seek a protective order.

. The limited nature of the assurance is further supported by the district judge's prior statement to Lambright: "I do believe you have the right to refuse to answer questions that are asked of you during the examination, but unlike the situation where someone actually has a privilege, because you don't have a privilege, I can consider your refusal to answer questions in deciding whether to grant the petition in connection with this case.”

. Perhaps in recognition of the weakness of its assurance argument, the majority states "although the assurances were made in the context of the testimony regarding the crime, as that was the testimony Lambright refused to give, there is no reason to believe that the protective order applied with any less force to other protected material introduced during the evidentiary hearing.” Majority at 821. Of course there are good reasons to question this assertion. There is no Bittaker protective order other than the September 2003 order, and as that order is limited to Lambright's testimony, there are no "other protected materials.” How can a party rely on an assurance that was not made concerning a protective order that was never issued?

. Even if poltz, 331 F.3d 1122, were not applicable, or if all the discovery in a federal habeas petition were construed to constitute documents "which have traditionally been kept secret for important policy reasons” (331 F.3d at 1134), the fact remains that here Lambright's documents were nevertheless ex *839 posed to the public at Lambright's habeas hearing. The majority’s revision of the district court's protective order will force the state to conduct additional discovery, but it cannot put the cat back in the bag.

. At the November 14, 2003 hearing, Lam-bright’s counsel, after indicating that he had thought that the protective order applied only to the discovery deposition, expressed concern that the state court on resentencing would not observe the district court’s protective order. The district court responded:
Well, I can’t imagine the judge that would admit the evidence when any testimony concerning the crime was given on the assurance of the judge before the testimony was given that the testimony could not be used in connection with the resentencing, and that is the order that I have entered, so I think they would have to disregard the protective order that I have issued and I suspect you would be very successful in precluding any use of it, so I don’t think it’s a realistic risk.
Furthermore, as the district court implied, were the state court to disregard the district court’s protective order, Lambright could file another federal habeas petition.

. This concern finds some support in the history of this case. The memorandum disposition in Lambright TV contained language that suggested that non-privileged documents might be covered by the protective order. 359 Fed.Appx. at 841. Thus, on remand in the district court, Lambright argued that non-privileged documents were covered by the protective order. The district court disagreed, commenting that such a proffered expansive reading of Bittaker found no support in Bittaker and "taken to its logical conclusion ... would also require that materials developed by Petitioner's federal habeas counsel be precluded from use at resentencing, forcing his state counsel to enlist new experts and reinvestigate mitigation.” The majority now concludes that the district court did not abuse its discretion in holding that non-privileged materials were not covered by the protective order. Majority at 824. I would go further and hold that non-privileged materials are not covered by any implied waiver.