# SUPREME COURT OF THE UNITED STATES

## RAMINDER KAUR *v.* MARYLAND

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
SPECIAL APPEALS OF MARYLAND

No. 19–1045.   Decided October 5, 2020

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

Although I join the Court's decision to deny certiorari, I write separately to address a concerning feature of this petition: The prosecutors who tried this case had extensive knowledge of defense counsel's confidential communications with the defendant, petitioner Raminder Kaur. For the reasons stated below, I fear that, in this case, the criminal justice system failed to live up to its highest ideals.

In 2014, Kaur was convicted of first-degree murder by a Maryland jury. Shortly thereafter, she moved for a new trial on the ground that her defense attorney had provided her with ineffective assistance of counsel. The trial court ordered Kaur to turn over her "entire defense file" so that prosecutors could respond adequately to her motion. 2019 WL 2407997, *5 (Md. Ct. Spec. App., June 7, 2019). After holding a multiday hearing, the court concluded that "the interests of justice required granting Ms. Kaur a new trial." *Id.,* at *6; see Md. Rule 4–331(a) (2020).

Because she had disclosed "a considerable amount of privileged information, including communications between [her] and her lawyers, communications between her lawyers and their support staff, and her lawyers' investigative and strategic work-product," Kaur asked the court for a protective order barring the prosecutors who had personally reviewed her defense file from retrying her case. 2019 WL 2407997, *1. The court agreed to prohibit the State from

making use of Kaur's privileged information at trial, but it denied her request to be tried by an untainted prosecution team. As a result, the same lawyers who were "exposed to all of Ms. Kaur's privileged information" tried Kaur a second time. *Id.,* at \*17. Kaur was again convicted, and she was sentenced to life imprisonment.

Kaur appealed to the Court of Special Appeals of Maryland, arguing (as relevant here) that the State violated her Sixth Amendment right to counsel by permitting attorneys who had reviewed her privileged information to prosecute her case. As an initial matter, the court rejected the State's contention that, by disclosing confidential information in the course of seeking a new trial, Kaur had effectively waived her attorney-client privilege for all purposes. But the court also rejected Kaur's contention that the prosecutors' knowledge of her defense strategy was presumptively prejudicial. Instead, the court concluded that Kaur had to demonstrate a realistic possibility that she was harmed in the second trial by the prosecutors' access to her privileged information or that the prosecutors used such information to their advantage. After comparing the records of Kaur's two trials, the court determined that Kaur had failed to make the requisite showing.

The Court of Appeals of Maryland, the State's highest court, denied further review. Kaur then filed a petition for a writ of certiorari in this Court.

"[I]t has long been recognized that the essence of the Sixth Amendment right is privacy of communication with counsel." *Weatherford* v. *Bursey*, 429 U. S. 545, 563 (1977) (Marshall, J., dissenting) (internal quotation marks and ellipsis omitted). In *Weatherford*, this Court considered whether a defendant's Sixth Amendment right had been violated when, at the defendant's invitation, an undercover agent attended a meeting between the defendant and his lawyer. *Id.*, at 550–551, 558. Based in part on the fact that there had been "no communication of defense strategy to

the prosecution," the Court rejected the defendant's claim. *Id.*, at 558. But the Court noted that the defendant "would have [had] a much stronger case" "had the prosecution learned . . . the details of the [lawyer-client] conversations about trial preparations." *Id.*, at 554.

Since *Weatherford*, many federal and state courts have struggled to define what burden, if any, a defendant must meet to demonstrate prejudice from a prosecutor's wrongful or negligent acquisition of privileged information. Unlike the defendants in those cases, however, Kaur disclosed (albeit at the trial court's direction) privileged information to the prosecutors for the limited purpose of vindicating her right to effective assistance of counsel. The prosecutors did not obtain Kaur's information surreptitiously. Few courts have had occasion to opine on whether the Sixth Amendment bars prosecutors from retrying a defendant in such circumstances. Cf. *Bittaker* v. *Woodford*, 331 F. 3d 715, 722 (CA9 2003) (holding that a waiver of attorney-client privilege for purposes of raising an ineffective-assistance-of-counsel claim does not extend to retrial, in part because "[e]xtending the waiver . . . would immediately and perversely skew the second trial in the prosecution's favor"). Because this question could benefit from further consideration by the lower courts, I agree with the decision to deny certiorari in this case.

But three important points bear mention. First, it is deeply disconcerting that the State has suggested that defendants who raise ineffective-assistance-of-counsel claims during the trial phase must forfeit their right to privileged communications with counsel. To vindicate the past denial of her Sixth Amendment right to effective assistance of counsel, a defendant should not have to waive her Sixth Amendment right to attorney-client confidentiality for purposes of any retrial to which she is entitled. See *Simmons* v. *United States*, 390 U. S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be

surrendered in order to assert another").

Second, this case demonstrates the many insidious ways that potential Sixth Amendment violations can affect the course of a trial. Take, for example, Kaur's ability to testify in her own defense. After the trial court denied her motion to be tried by new prosecutors, Kaur filed a motion "to limit the scope of the State's cross-examination in the event that [she] chose to testify." 2019 WL 2407997, *19. Kaur's concern that the State might use her privileged information for its own advantage was hardly hypothetical: One of the prosecutors had, in fact, already informed the court that she had taken the opportunity to "'scour'" Kaur's defense file and that she had "'made a list of all the negatives that [would] befall the defendant'" should she choose to testify. *Id.*, at *18 (some alterations omitted). After a "three-way discussion between counsel and the trial court," it was agreed that the prosecutor would "rely solely upon her recollection of Ms. Kaur's prior testimony" from the hearing on her motion for a new trial, but that one of the prosecutor's assistants could review the transcript "for exact wording." *Id.,* at *19. The court then "reserved any ruling on the scope of possible cross-examination until Ms. Kaur completed her direct testimony." *Ibid.* Perhaps unsurprisingly, Kaur declined to testify.

This is just one example of the many ways in which the prosecutors' possession of Kaur's privileged information could have subtly but indelibly affected the course of her trial. One can think of many others. The prosecutors, either intentionally or subconsciously, may have selected a different mix of jurors. They may have changed their pretrial preparation, perhaps by emphasizing different parts of the State's case or focusing on different weaknesses in the defense. Or they may have considered different lines of questioning, brainstormed different objections, or anticipated different arguments. The trouble with all of these scenarios is that, while the Court of Special Appeals no

doubt dutifully reviewed the record, it is exceedingly difficult to prove a negative. It would be an impossible task for any court, no matter how diligent, to identify and assess all potential sources of prejudice simply by comparing the records of two trials.

Finally and crucially, the decision whether to allow the original prosecution team to retry Kaur was not the court's alone to make. The prosecutors, too, had a choice. And in making that choice, as with all prosecutorial decisions, those lawyers acted as "the representative[s] not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger* v. *United States*, 295 U. S. 78, 88 (1935). Prosecutors wield an immense amount of power, and they do so in the name of the State itself. That unique privilege comes with the exceptional responsibility to ensure that the criminal justice system indeed serves the ends of justice. Prosecutors fall short of this task, and therefore do a grave disservice to the people in whose name they litigate, when they permit themselves to enjoy unfair trial advantages at defendants' expense. Here, regardless of the reason for their acquisition of Kaur's privileged information, and regardless of whatever minimum conduct was required of them by the Sixth Amendment, the prosecutors should have recused themselves from participating in Kaur's second trial as a matter of professional conscience. Their failure to do so casts a troubling and unnecessary shadow over Kaur's conviction and sentence to life imprisonment.